UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa Rustad,<br><br>              Plaintiff,<br><br>vs.<br><br>SMB Disability Solutions, Inc. f/k/a SMB Homes, Inc.,<br>              Defendant. | Case No. 0:18-cv-2595<br><br>**COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is an action for unpaid overtime, brought under the Fair Labor Standards Act of 1938 ("FSLA"), and retaliatory discharge, brought under Minnesota's Notice of Termination Law (commonly known as the "whistleblower" law) and Minnesota's Reporting of Maltreatment of Vulnerable Adults Law.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff is bringing a claim under the FSLA. Defendant previously consented to this Court exercising jurisdiction over it based upon violations of the FLSA. *See Perez v. SMB Homes, Inc.*, 15-cv-3281 (PAM/FLN) (Docket No. 4). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C § 1367(a) because they are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

1

3. This district is the proper venue for this action because a substantial part of the events giving rise to the claim occurred in this district. *See* 28 U.S.C. § 1391(b)(2).

## THE PARTIES

4. Plaintiff Lisa Rustad is a natural person, residing in the City of Rochester, County of Olmsted, State of Minnesota.

5. Upon information and belief, Defendant SMB Disability Solutions, Inc., formerly known as SMB Homes, Inc., is a corporation organized under the laws of the State of Minnesota. Defendant provides residential services to vulnerable adults with brain injuries, mental health conditions, and other physical and neurological disabilities, such as stroke, Multiple Sclerosis, Parkinson's, Asperger's, and autism. Defendant's principal place of business is located at 6635 Zumbro Highlands NW, Rochester, MN 55901. Defendant's registered agent's office is located at 2424 75th Street NW, Suite 5, Rochester, MN 55901. Defendant owns and operates six group homes and independent living apartment complexes throughout the Rochester, MN area. Defendant's CEO is Steve Buehler. Defendant's employees, at all times relevant to their employment, are involved in commerce.

## FACTUAL ALLEGATIONS

6. Defendant employed Plaintiff as a Direct Support Professional from November 27, 2017 through May 15, 2018. Defendant assigned Plaintiff to work in the Ridgeview House, which is located at 6467 55th Avenue NW, Rochester, MN 55901. Plaintiff's job duties involved providing care to residents living at the Ridgeview House, such as assisting the residents in day-to-day living, scheduling medical appointments,

transporting residents to and from medical appointments, documenting residents' monthly budgets, grocery shopping for residents, informing the residents' medical teams of changes in the residents' physical or mental health, completing required daily documentation regarding all residents, attending monthly employer training, attending mandatory quarterly employer meetings, as well as generally looking out for the residents' well-being. Defendant assigned four other employees to work at the Ridgeview House. The residents at the Ridgeview house require care twenty-four hours a day. Defendant assigned one employee to work at the Ridgeview House at any given time. The Ridgeview House is a facility under Minn. Stat. § 626.5572, subd. 6(a).

7. Defendant compensated Plaintiff at an hourly rate of $16.00 during her employment.

8. From December 10, 2017 through May 15, 2018, Plaintiff worked twenty-two workweeks wherein she worked five shifts at the Ridgeview House that were sixteen hours in length. For each of these shifts, Defendant required Plaintiff to work eight hours of active work time, where she was providing care to Ridgeview residents. Defendant compensated Plaintiff for the eight hours of active work time, but Defendant also required Plaintiff to remain at the house for an additional eight hours in case issues arose with residents. These additional eight hours were during the night wherein Plaintiff was permitted to sleep, but, if issues arose with residents, which they often did, Plaintiff was expected to tend to these issues. Defendant has not compensated Plaintiff for any of the eight-hour overnight shifts.

9. Upon information and belief, Defendant has failed to pay appropriate overtime compensation to at least three other employees within the last year.

10. Defendant has previously been held liable for FSLA violations. On December 2, 2015, a Consent Judgment was entered against Defendant and Steven Buehler for violations of the FLSA. *See Perez v. SMB Homes, Inc.*, 15-cv-3281 (PAM/FLN) (Docket No. 4). The Consent Judgment ordered, under 29 U.S.C. § 201 et seq. ("FLSA"), that Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them are permanently enjoined and restrained from violating the provisions of the FLSA in any of the following manners: (a) failing to pay employees minimum wage, (b) failing to pay employees at a rate not less than one and one-half times their regular rate for hours worked in excess of forty per workweek, and (c) failing to maintain and preserve records of employees' wages, hours, and conditions and practices of employment. The Consent Judgment also ordered that Defendants, for a period of two years, shall retain, at their own cost, a certified public accounting firm to conduct biannual audits of the Defendants' pay practices of all locations owned, operated, or managed by Defendants.

11. During Defendant's employment of Plaintiff, Plaintiff was a "mandatory reporter" of vulnerable adult maltreatment pursuant to Minn. Stat. § 626.5572, subd. 16. As a mandatory reporter, Plaintiff was required to report suspected instances of maltreatment of vulnerable adults to the Minnesota Adult Abuse Reporting Center (MAARC). *See* Minn. Stat. § 626.557, subd. 4. MAARC is a state-wide common entry point for accepting reports of suspected maltreatment of vulnerable adults and is

4

administrated by the Minnesota Board on Aging. MAARC maintains a toll-free number and is available twenty-four hours a day, seven days a week to accept reports from the general public and mandated reporters. MAARC promptly submits reports to the appropriate investigative agencies.

12. During her employment, Plaintiff observed three suspected instances of Defendant perpetrating maltreatment on vulnerable adults. First, one of the Ridgeview residents had a conservator who was supposed to provide the resident $100 per month, considered as personal needs money, for miscellaneous expenses. The conservator frequently would not provide the resident with the monthly allowance. When payments were made, they were untimely and did not account for missed months. Defendant knew about the conservator's failings but did nothing to support the resident. Second, an employee at the Ridgeview House, D.S., would frequently dispense residents the wrong medications. When this occurred, D.S. failed to document the medical error in the residents' daily notes, and D.S. would simply make light of the issue as if nothing had occurred. D.S. was not placed on probation and no disciplinary action was taken against her related to these medication errors. Third, Plaintiff learned that an employee at another house, the Lincoln house, would leave residents unsupervised for extended periods of time on a daily basis. This was contrary to the needs of the residents at the Lincoln house.

13. On or about May 4, 2018, Plaintiff reported, in good faith, the three instances of suspected abuse to MAARC. Plaintiff told another employee at the Ridgeview House that she had made a report to MAARC.

14. Upon information and belief, MAARC referred Plaintiff's report to the appropriate investigative agency, which immediately investigated Plaintiff's claims. Given that Plaintiff's claims involved conduct of the other employees at the Ridgeview House, and that Plaintiff told other employees that she made a report to MAARC, Defendant was able to quickly determine Plaintiff made the report to MAARC and terminated her employment on May 15, 2018 because she had made the report.

## **COUNT I – UNPAID OVERTIME**

15. Under 29 U.S.C. § 207(a)(1), Defendant was required to compensate Plaintiff at a rate not less than one-and-a half times her regular rate for time worked in excess of forty hours per workweek.

16. Plaintiff worked twenty-two workweeks where she worked eighty hours per week but was only compensated forty hours.

17. Defendant owes Plaintiff $21,120.00 in uncompensated overtime.

18. Under 29 U.S.C. § 215(a)(1), it is unlawful for any person to violate the provisions of 29 U.S.C. § 207.

19. Under 29 U.S.C. § 216, any employer who violates 29 U.S.C. § 207 shall be liable to the employee in the amount of their unpaid overtime compensation, and in additional equal amount as liquidated damages.

20. Defendant owes Plaintiff an additional $21,120.00 as liquidated damages for unpaid overtime.

21. Under 29 U.S.C. § 216, Plaintiff is entitled to reasonable attorney fees and costs for bringing this action.

## COUNT II – RETALITORY DISCHARGE
## UNDER MINN. STAT. § 181.932

22. Under Minn. Stat. § 181.932, subd. 1(1), an employer shall not discharge an employee because he or she, in good faith, reports a violation, suspected violation, or planned violated of any federal or state law or common law or rule adopted pursuant to law to an employer or any governmental body or law enforcement official.

23. Under Minn. Stat. § 181.932, subd. 1(4), an employer shall not discharge an employee because he or she, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm.

24. Defendant terminated Plaintiff's employment because she, in good faith, made the report to MAARC, a governmental body or law enforcement official, concerning suspected violations of various federal and state laws. Defendant's conduct was done with a deliberate disregard for the rights and safety of Plaintiff.

25. Defendant terminated Plaintiff's employment because she, in good faith, reported a situation in which the quality of health care services provided by Defendant violated various standards established by federal and state law and, in so doing, placed the public at risk of harm. Defendant's conduct was done with a deliberate disregard for the rights and safety of Plaintiff.

26. As a direct and proximate result of the termination, Plaintiff suffered damages.

27.     Under Minn. Stat. § 181.935(a), Plaintiff is entitled to reasonable attorney fees and costs for bringing this action.

## COUNT III – RETALITORY DISCHARGE
## UNDER MINN. STAT. § 626.557

28.     Under Minn. Stat. § 626.557, subd. 17, a facility or person shall not retaliate against any person who reports in good faith suspected maltreatment pursuant to this section because of the report.  Under Minn. Stat. § 626.5572, subd. 15 and 9, maltreatment includes, among other things, financial exploitation, which involves a person engaging in the unauthorized expenditure of funds entrusted to the actor by the vulnerable adult that results or is likely to result in determinant to the vulnerable adult or fails to use the financial resources of the vulnerable adult to provide food, clothing, shelter, health care, therapeutic conduct or supervision for the vulnerable adult and the failure results or is likely to result in determinant to the vulnerable adult.

29.     Under Minn. Stat. § 626.557, subd. 17(c), there is a rebuttable presumption a termination of employment within 90 days of a report is retaliatory.

30.     Defendant terminated Plaintiff's employment because she, in good faith, reported to MAARC suspected maltreatment under Minn. Stat. § 626.557 et seq.  The termination occurred approximately 11 days after Plaintiff made her report to MAARC.

31.     As a direct and proximate result of the termination, Plaintiff suffered damages.

32.     Under Minn. Stat. § 626.557, subd. 17(b) and Minn. Stat. § 181.935(a), Plaintiff is entitled to reasonable attorney fees and costs.

33. Under Minn. Stat. § 626.557, subd. 17(b), Plaintiff is entitled to punitive damages up to $10,000 for the retaliatory discharge.

### **COUNT IV – VIOLTION OF CONSENT JUDGMENT**

34. On December 2, 2015, a Consent Judgment was entered against Defendant and Steven Buehler for violations of the FLSA. *See Perez v. SMB Homes, Inc.*, 15-cv-3281 (PAM/FLN) (Docket No. 4).

35. The Consent Judgment ordered, under 29 U.S.C. § 201 et seq. ("FLSA"), that Defendant is permanently enjoined and restrained from violation the overtime provisions of the FLSA.

36. Defendant violated the overtime provisions of the FLSA by failing to pay Plaintiff and others appropriate overtime pay.

37. As a direct and proximate result of said conduct, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff prays that judgement be entered against Defendant, in an amount in excess of $50,000.00, together with interest, costs, disbursements, attorney's fees, and punitive damages, and any other relief as the Court deems just, fair, and equitable.

### **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this 6th day of September, 2018     s/Grant M. Borgen
Charles A. Bird, Reg. No. 8345
Grant M. Borgen, Reg. No. 395826
BIRD, JACOBSEN & STEVENS, P.C.
300 Third Avenue SE, Suite 305
Rochester, MN 55904
Telephone: (507) 282-1503
Fax: (507) 282-7736
Email: charles@birdjacobsen.com
        grant@birdjacobsen.com

*Attorneys for Plaintiff*